Matthew R. Lewis (7919)
Jascha K. Clark (16019)
Brittany J. Merrill (16104)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile: (801) 532-7543
E-mail: mlewis@rqn.com
E-mail: jclark@rqn.com
E-mail: bmerrill@rqn.com

*Attorneys for Receiver, Maria E. Windham*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER NORVILLE, an individual; NORTHWEST JET ASSOCIATES, an Oregon corporation; NORTHWEST JET AVIATION, an Oregon corporation; BUTLER NATIONAL SERVICES CORPORATION, a Kansas corporation; INTERNATIONAL TITLE CORPORATION, an Oklahoma corporation; JOEL HERNANDEZ, an individual; TIME4LUXURY.COM, a dba or unknown entity; and U SAVE ON TIME.COM, LLC, a Florida limited liability company,<br><br>Defendants. | **COMPLAINT**<br>**(Ancillary Suit)**<br><br><br>Case No. 2:18-cv-00057-EJF<br><br>Judge: Evelyn J. Furse |

Maria E. Windham (the "Receiver"), as Receiver for Marquis Properties, LLC and the assets of the Marquis Properties Receivership Estate, complains against Defendants Christopher Norville, Northwest Jet Associates, Northwest Jet Aviation, Butler National Services Corporation, International Title Corporation, Joel Hernandez, Time4Luxury.com, and U Save On Time.com, LLC (each a "Defendant" and collectively, "Defendants") as follows:

## INTRODUCTION

This lawsuit is related to a real estate Ponzi scheme (the "Marquis Ponzi Scheme") perpetrated by Chad Deucher through Marquis Properties, LLC ("Marquis Properties"), and related entities. Chad Deucher pleaded guilty in his criminal case to operating Marquis Properties as a Ponzi scheme from 2010 to 2016, and he is currently serving 84 months of prison time. *See United States v. Chad Roger Deucher*, United States District Court for the District of Utah, Case No. 2:16-CR-189-DN.

This is one of several "clawback" lawsuits concerning the Marquis Ponzi Scheme filed by the Receiver appointed by the Court in the parallel civil case filed by the Securities and Exchange Commission ("SEC"). In this lawsuit, the Receiver seeks to "claw back" into the Marquis Properties Receivership Estate payments transferred directly or indirectly to Defendants to pay for the personal expenses of Chad Deucher, his family members, and others, through the use of Marquis Properties' corporate credit cards and corporate bank accounts.

Each and every Defendant must return any payments received from Marquis Properties because Chad Deucher, acting with fraudulent intent in furtherance of the Marquis Ponzi Scheme while Marquis Properties was insolvent, caused Marquis Properties to transfer the payments identified below to Defendants for personal, non-business related expenses. Marquis Properties

did not receive reasonably equivalent value for these payments because the payments were for goods and/or services that were wholly unconnected to the purported business of Marquis Properties, and instead were used to pay for the personal expenses of Chad Deucher and others. Defendants were unjustly enriched by receipt of these payments made from funds taken from victim investors.  The value of the assets Chad Deucher wrongfully directed Marquis Properties to pay to the Defendants amounts to at least $1,061,174.89.

## PARTIES

1. Maria E. Windham is the court-appointed Receiver for Marquis Properties and the Marquis Properties Receivership Estate.

2. Upon information and belief, Defendant Christopher Norville is an individual who resides in Multnomah County, Oregon.  Upon information and belief, Defendant Northwest Jet Associates is an Oregon corporation with its principal place of business in Yamhill County, Oregon, and is owned and controlled by Christopher Norville.  Upon information and belief, Defendant Northwest Jet Aviation is an Oregon corporation with its principal place of business in Yamhill County, Oregon, and is owned and controlled by Christopher Norville.  Collectively, Christopher Norville, Northwest Jet Associates, and Northwest Jet Aviation, are identified herein as the "Northwest Defendants".

3. Upon information and belief, Defendant Butler National Services Corporation ("BNSC") is a Kansas corporation with its principal place of business in Olathe, Kansas.

4. Upon information and belief, Defendant International Aircraft Title ("IAT") is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.[1]

---

[1] The Northwest Defendants, BNSC and IAT, are collectively referred to herein as the "Aircraft Defendants".

5. Defendant Joel Hernandez is an individual who, upon information and belief, resides in Miami-Dade County, Florida. Defendant Time4Luxury.com is, upon information and belief, a dba or unknown entity controlled by Joel Hernandez with its principal place of business in Miami-Dade County, Florida. U Save On Time.com, LLC, is a Florida limited liability company, owned and controlled by Joel Hernandez, with its principal place of business in Miami-Dade County, Florida. Collectively, Joel Hernandez, Time4Luxury.com, and U Save On Time.com, LLC, are identified herein as the "Jewelry Defendants".

6. Each and every Defendant to this case received payments that were improperly transferred from Marquis Properties' assets as described herein.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367. This Complaint is brought to accomplish the objectives of the Amended Order Appointing Receiver, and thus this matter is ancillary to the Court's exclusive jurisdiction over the receivership estate.

8. The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 754 and 1692.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 754 as this action is related to the SEC's parallel civil case pending in this District and the Receiver was appointed in this District.

## GENERAL ALLEGATIONS

**Marquis Ponzi Scheme**

10. Marquis Properties was operated by its principal Chad Deucher as a Ponzi scheme at all times relevant to the matters asserted in this action.

11. On information and belief, Chad Deucher raised money to further the Ponzi scheme from over 250 investors in Marquis Properties.

12. Chad Deucher represented to investors that Marquis Properties offered investments in turnkey real estate properties, promissory notes secured by real properties, and joint venture agreements to purchase real properties. In that regard, Chad Deucher represented that Marquis Properties located, purchased, renovated and sold single family and small multi-family homes in lucrative areas of the country. Chad Deucher told investors that Marquis Properties has proven renovation crews, property managers and realtors on the ground to assist with all stages of the project, eliminating the need for direct involvement.

13. Chad Deucher represented to investors that they would receive guaranteed return of principal and returns on their investment in the form of rental income, interest payments, and/or profits from the sale of properties.

14. The investments offered by Marquis Properties constitute securities.

15. Chad Deucher represented that investments with Marquis Properties were safe, low-risk, or risk-free because investment proceeds would be secured by a first deed of trust on property wholly owned by Marquis, and that investments would be "over-collateralized".

16. Chad Deucher omitted to disclose to investors, however, that (a) the properties Marquis Properties offered as collateral were not owned by Marquis Properties, were

substantially encumbered, and/or were in uninhabitable or blighted condition; (b) that Marquis Properties itself was insolvent and unable to make investor interest and principal payments according to terms of agreements; and (c) that investor returns were being paid from the funds of new investors.

17. In April 2017, Chad Deucher pleaded guilty in his parallel criminal case, Case No. 2:16-CR-189-DN, to operating Marquis Properties as a Ponzi scheme between March 2010 and February 2016.

18. On October 11, 2017, Chad Deucher was sentenced to 84 months in federal prison, and, upon his release, 36 months of supervised release. Mr. Deucher was also ordered to pay $16,560,552.00 in restitution.

**The SEC Action**

19. On January 19, 2016, in case No. 2:16-cv-00040-JNP, the SEC filed suit (the "SEC Action") against Chad Deucher, Richard Clatfelter and Marquis Properties. Chad Deucher's wife, Jessica Deucher, was named as a relief defendant.

20. On January 20, 2016, this Court entered the Order Freezing Assets and Protecting Documents (Dkt. No. 10) (the "Freeze Order").

21. The Freeze Order specifically ordered that:

Except as otherwise specified herein, all of Defendants' Assets are frozen. All persons and entities with direct or indirect control over any of Defendants' Assets, who receive actual notice of this order, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, encumbering, concealing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but is not limited to, Defendants' Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds. Such institutions are caused to hold or retain within their control and prohibit the withdrawal, removal, transfer, or other disposal of any such assets, funds, or other properties.

(*See id.* at 2-3.)

22.     On January 18, 2017, the Court entered the Order Appointing Receiver, pursuant to which Maria E. Windham was appointed Receiver. (*See* Dkt. No. 110.)

23.     On October 24, 2017, the Court amended the terms of the Order Appointing Receiver and issued an Amended Order Appointing Receiver.[2] (Dkt. No. 182.)

24.     The Court found appointment of the Receiver to be "necessary and appropriate for the purposes of marshaling and preserving Defendants' Marquis Properties (the 'Entity Receivership Defendant') and Chad Deucher's (the 'Individual Receivership Defendant') (collectively the 'Receivership Defendants') assets that were frozen by the [Freeze Order]." (Dkt. No. 182).

25.     The Court defined the "Receivership Estate" as the assets of Marquis Properties and Chad Deucher that were frozen by the Court's Order Freezing Assets on January 20, 2016 ("Frozen Assets"), as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) were fraudulently transferred by the Defendants (the "Recoverable Assets").[3] (*Id.* at 1-2.)

26.     Further, the Court found that based on the record in the proceedings before it, the Frozen Assets and Recoverable Assets include, but are not limited to, all assets of the following entities owned or operated by the Individual Receivership Defendant: Marquis Air, LLC;

---

[2] On January 12, 2018, the Court entered a further Order Reappointing Maria E. Windham Receiver that reappointed Ms. Windham on the same terms. (Dkt. No. 205.) This procedure is utilized to reset the 10 day clock to file notices pursuant to 28 U.S.C. § 754.

[3] Except, the Court excluded the residence titled in the name of Relief Defendant, Jessica Deucher located at 1136 North 650 East, Orem Utah from the Receivership Estate. (Dkt. No. 182).

Marquis Companies, LLC; Marquis Enterprises, LLC; Marquis, LLC; Marquis Direct; Invo; and Invo Direct (collectively with Marquis Properties, the "Marquis Entities"). (*Id.* at 2.)

27. Moreover, the Court ordered that for any of the Receivership Defendants' property or interest in property, of any kind whatsoever, whether real or personal, whether direct or indirect, to be excluded from the Receivership Estate, the Receivership Defendants were required to file an accounting with the Court, including books and records sufficient to identify a source of the assets that is unconnected with investor funds, frozen assets, or other fraudulent activities, within 20 days of the entry of Amended Order Appointing Receiver. (*Id.* at ¶ 4.)

28. Pursuant to the terms of the Amended Order Appointing Receiver, the Receiver is charged with, among other things, investigating the activities of the Receivership Defendants, gathering and recovering assets of the Receivership Defendants, including pursuing claims to recover those assets, as necessary. Specifically, Paragraph 6 of the Amended Order Appointing Receiver vests the Receiver with, among other authority, "all powers and authority of a receiver at equity." (*See id.* at ¶ 6.) The Receiver is caused to "pursue and preserve all of the Marquis Entities claims (*id.* at 7), and she has authority to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver." (*Id.* at ¶ 9(I); s*ee also id.* at ¶ 36.)

**Fraudulent Transfers of Payments to Defendants for Personal Expenses**

29. While Chad Deucher operated Marquis Properties as a Ponzi scheme, and while Marquis Properties was insolvent, Chad Deucher caused a series of payments to Defendants from Marquis Properties' corporate bank accounts and/or corporate credit cards, to pay for personal expenses incurred by Chad Deucher, his family members, and others.

30. Chad Deucher wrongfully caused Marquis Properties to pay for these personal expenses in furtherance of his fraud.

31. Chad Deucher caused Marquis Properties to make these payments to Defendants in exchange for Defendants providing personal benefits to Chad Deucher and others. Each and every one of these payments reduced the assets of Marquis Properties available to repay investors.

32. At all times relevant hereto, Marquis Properties was purportedly in the real estate business.

33. At no point was Marquis Properties ever in the aircraft and/or jewelry business.

34. Upon information and belief, the Defendants cannot establish that they returned reasonably equivalent value to Marquis Properties for each of the payments received and that they did so in good faith without reason to know the payment was improper.

**Payments Made to the Aircraft Defendants**

**The Northwest Defendants**

35. In furtherance of the Marquis Ponzi Scheme, between December 2011 and November 2014, Chad Deucher directed Marquis Properties to pay the Northwest Defendants, through the transfer of funds directly from a Marquis Properties corporate bank account and also through the use of a Marquis Properties corporate credit card, for personal expenses that Chad Deucher and others incurred.

36. The Marquis Properties corporate bank accounts were held at U.S. Bank, with account numbers ending in 9561, 8978, and 9066. Chad Deucher transferred at least $484,491.07 to the Northwest Defendants from those corporate bank accounts to pay for

9

personal expenses.

37. The Marquis Properties corporate credit card was issued by American Express, which Chad Deucher used to pay the Northwest Defendants at least $261,726.58 for personal expenses.

38. Chad Deucher caused Marquis Properties to make these payments to the Northwest Defendants in excess of any value provided by the Northwest Defendants to Marquis Properties.

39. Altogether, the Northwest Defendants were the recipients and/or beneficiaries of at least $746,217.65 in payments from Marquis Properties, which constitute fraudulent transfers.

40. The source of these payments to the Northwest Defendants was investor funds.

41. Upon information and belief, some or all of the payments made to the Northwest Defendants were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

**BNSC**

42. In furtherance of the Marquis Ponzi Scheme, in or around October 2013, Chad Deucher directed Marquis Properties to pay Defendant BNSC, through the transfer of funds directly from a Marquis Properties corporate bank account, for personal expenses that Chad Deucher and others incurred.

43. The Marquis Properties corporate bank account was held at U.S. Bank, with an account number ending in 8978. Chad Deucher transferred at least $97,605.24 to BNSC from that corporate bank account to pay for personal expenses.

44. Chad Deucher caused Marquis Properties to make these payments to BNSC in

excess of any value provided by BNSC to Marquis Properties.

45. Altogether, BNSC was the recipients and/or beneficiary of at least $ 97,605.24 in payments from Marquis Properties, which constitute fraudulent transfers.

46. The source of these payments to BNSC was investor funds.

47. Upon information and belief, some or all of the payments made to BNSC were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

**IAT**

48. In furtherance of the Marquis Ponzi Scheme, in or around April 2012, Chad Deucher directed Marquis Properties to pay Defendant IAT, through the transfer of funds directly from a Marquis Properties corporate bank account, for personal expenses that Chad Deucher and others incurred.

49. The Marquis Properties corporate bank account was held at U.S. Bank, with an account number ending in 9561. Chad Deucher transferred at least $127,350 to IAT from that corporate bank account.

50. Chad Deucher caused Marquis Properties to make these payments to IAT in excess of any value provided by IAT to Marquis Properties.

51. Altogether, IAT was the recipient and/or beneficiary of at least $127,350 in payments from Marquis Properties, which constitute fraudulent transfers.

52. The source of these payments to IAT was investor funds.

53. Upon information and belief, some or all of the payments made to IAT were unsupported by good faith and reasonably equivalent value, and they must be returned to

11

Marquis Properties.

**Payments Made to the Jewelry Defendants**

54. In furtherance of the Marquis Ponzi Scheme, between December 2010 and December 2013, Chad Deucher directed Marquis Properties to pay the Jewelry Defendants, through the transfer of funds directly from a Marquis Properties corporate bank account and also through the use of a Marquis Properties corporate credit card, for personal expenses that Chad Deucher and others incurred.

55. The Marquis Properties corporate bank account was held at U.S. Bank, with an account number ending in 9561. Chad Deucher transferred at least $20,520 to the Jewelry Defendants from that corporate bank account.

56. The Marquis Properties corporate credit card was issued by American Express, which Chad Deucher used to pay the Jewelry Defendants at least $69,482 for personal expenses.

57. Chad Deucher caused Marquis Properties to make these payments to the Jewelry Defendants in excess of any value provided by the Jewelry Defendants to Marquis Properties.

58. Altogether, the Jewelry Defendants were the recipients and/or beneficiaries of at least $90,002 in payments from Marquis Properties, which constitute fraudulent transfers.

59. The source of these payments to the Jewelry Defendants was investor funds.

60. Upon information and belief, some or all of the payments made to the Jewelry Defendants were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

### FIRST CLAIM FOR RELIEF
(**Fraudulent Transfer – Utah Uniform Fraudulent Transfer Act – All Defendants**)

61. The Receiver realleges and incorporates by this reference the foregoing

paragraphs of the Complaint.

62.     Each and every Defendant received transfer(s) of assets from Marquis Properties and/or is a beneficiary of the transfer(s) of assets from Marquis Properties.

63.     At all times relevant to the matters asserted herein, Chad Deucher operated Marquis Properties as a Ponzi scheme.

64.     Because the transfers were made at the direction of Chad Deucher while Marquis Properties was operated as a Ponzi scheme, as a matter of law, these transfers were made by Marquis Properties with the intent to hinder, delay or defraud creditors and/or investors of Marquis Properties.

65.     Furthermore, the transfers were made at a time when Marquis Properties was insolvent.

66.     The payments were made from investor funds and reduced the amount of money available to return to investors.

67.     Defendants will be unable to establish that Marquis Properties received reasonably equivalent value for the transfers and that Defendants took the payments or the benefit of the payments in good faith.

## SECOND CLAIM FOR RELIEF
**(Unjust enrichment – All Defendants)**

68.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

69.     A benefit was conferred upon each and every Defendant by transfer of assets belonging to Marquis Properties to the Defendant or to another for the Defendant's benefit.

70.     Each and every Defendant knew of the benefit conferred upon her by receipt of

assets or the benefit of the assets from Marquis Properties.

71. Each and every Defendant's retention of assets or the benefit of the assets conferred by Marquis Property, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

72. It would be unjust to allow Defendants to retain these illegally obtained payments or to retain the benefit thereof.

**WHEREFORE**, the Receiver prays as follows:

A. The Receiver requests that each and every Defendant be ordered to return to the Receivership Estate the funds that she received from Marquis Properties, and that judgment be entered against each Defendant and in favor of the Receiver for the total amount transferred to each Defendant;

B. In the case that the funds were spent to acquire any real or personal property, the Receiver requests that a constructive trust be imposed upon the property, and an order be entered that the property must immediately be turned over to the Receiver. Further, the Receiver requests that she be granted any other relief, both special and general, to which she may be justly entitled;

C. For prejudgment interest on each of the payments transferred to Defendants; and

D. For such other relief as the Court may allow.

DATED this 18th day of January, 2018.

        RAY QUINNEY & NEBEKER P.C.

        */s/ Jascha K. Clark*
        Matthew R. Lewis
        Jascha K. Clark
        Brittany J. Merrill

        *Attorney for the Receiver, Maria E. Windham*

1440872